UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LaTonya Jackson, | Civ. No. 23-2296 (PAM/DTS) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Hennepin Healthcare Systems, Inc., and Duang See, individually and as a representative of Hennepin Healthcare Systems, Inc., | |
| Defendants. | |

This matter is before the Court on Defendants' Motion to Dismiss. For the following reasons, the Motion is granted.

**BACKGROUND**

Plaintiff LaTonya Jackson worked in the radiology department at Defendant Hennepin Healthcare Systems, Inc., for more than 20 years, from 2001 to 2022. (Compl. ¶ 14.) Hennepin Healthcare is a subsidiary of Hennepin County. (Id. ¶ 2.) In her Complaint, Jackson alleges that her supervisor, Defendant Duang See, and other unspecified individuals at Hennepin Healthcare harassed her, treated her differently, and retaliated against her when she complained about the differential treatment. (See id. ¶ 19.) According to Jackson, these actions were taken because of her race, her emotional disability, and her age. (See id. ¶ 31.) The retaliation eventually led to Jackson's termination. (Id. ¶ 12.)

Jackson's Complaint raises four claims: Count I claims discrimination on the basis of age, race, and disability in violation of Title VII, 42 U.S.C. §§ 2000e et seq.; Count II claims a violation of Jackson's equal-protection rights under 42 U.S.C. § 1983; Count III claims a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.; and Count IV claims that Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., when they terminated Jackson's employment a few days after she notified Hennepin Healthcare of her intention to take leave under the Family and Medical Leave Act ("FMLA") to deal with a "health issue." (Compl. ¶¶ 51-52.) In her opposition memorandum, Jackson abandons her § 1983 claim, asking that it be dismissed without prejudice. (Docket No. 15 at 2 n.1.) This is the only claim brought against Defendant See and thus Defendant See will likewise be dismissed.

**DISCUSSION**

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in Jackson's favor. Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. In assessing the sufficiency of the complaint, the Court may disregard legal conclusions that are couched as factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

A. **Statute of Limitations**

Title VII imposes a 90-day statute of limitations: "[i]f a charge filed with the [EEOC] is dismissed . . . , the [EEOC] shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge."[1]  42 U.S.C. § 2000e–5(f)(1).  Jackson does not dispute that she was notified of the EEOC's dismissal of her charge on May 5, 2023, giving her until August 3, 2023, to file her lawsuit.

According to Jackson, she timely filed her lawsuit on August 3, 2023.  Jackson points to the date at the top of the docket sheet on the Court's electronic case filing ("ECF") system, which shows a "Date Filed" of 08/03/2023.  (Ward Decl. (Docket No. 16) Ex. 1.)  But the notice of electronic filing associated with the Complaint shows that the Complaint itself was not filed until after midnight—12:08 am, to be precise—on August 4, 2023.  Defendants thus argue that the Complaint is untimely and should be dismissed on that basis.

The Rules provide that a party "commence[s]" a "civil action . . . by filing a complaint with the court."  Fed. R. Civ. P. 3.  Thus, the filing of the Complaint, not the opening of a civil action on the Court's ECF system, is the date the lawsuit commences for purposes of the statute of limitations.

To commence a civil case on the District of Minnesota's ECF system, a putative plaintiff must perform several steps.  See generally "Filing a New Civil Case," D. Minn.

---

[1] This section provides another impediment to Jackson's claims, because her EEOC charge listed only Hennepin Healthcare as a respondent, but her lawsuit names both Hennepin Healthcare and Duang See. (Docket No. 13-1 at 2.)  Given Jackson's abandonment of her only claim against See, however, this discrepancy is immaterial.

3

Electronic Case Filing Procedures Guide – CIVIL CASES ("ECF Civil Guide") (available at https://www.mnd.uscourts.gov/sites/mnd/files/Civil-ECF-Users-Manual.pdf) (archived at https://perma.cc/SUW5-UEDS). The ECF Civil Guide makes clear that "opening [a civil case] is a two part process: 1) enter the case data and 2) file the initiating documents." Id. at 10.

The first step to commencing a civil case involves filling out a Case Data Screen with pertinent information regarding the parties, the nature of the lawsuit, whether the party demands a jury trial, and the basis for the Court's jurisdiction. Id. at 10-11. After the filing party has entered all relevant information into the Case Data Screen, the party must click the "Create Case" button. Id. at 15. The system then offers a final opportunity to review the information entered. Id. If the information is correct, the party clicks "Yes" and "[t]he case data is now entered in CM/ECF and a case number has been assigned." Id.

But to commence the case, the party must complete the second step of the process, namely, the filing of a complaint or other case-initiating document. Id. Filing a case-initiating document itself requires confirming that the case number is correct, choosing the type of document being filed, confirming the name of the filing party, and confirming the identity of those against whom the claim(s) are filed. Id. at 16. The party must also pay the filing fee. Id. at 15. Only after proceeding through those steps may the document itself—here, the Complaint—be uploaded to the ECF system. Id. at 16. And only after these documents are filed does the system generate a notice of electronic filing (NEF) indicating that a case has been opened and a district judge and magistrate judge assigned—as the ECF Civil Guide makes clear, no judges are assigned to the case until after the case-

4

initiating documents are filed.

Jackson's attorney apparently began the case-opening process on August 3, 2023, and likely completed step one of that process, as evidenced by the docket sheet's "Date Filed" of August 3, 2023. But the NEF for the Complaint shows that the second step of the process—the filing of the Complaint—was not completed until August 4, 2023.

Counsel offered a single explanation for this discrepancy, contending that he mistakenly filed a blank civil cover sheet in conjunction with the Complaint. The Clerk's Office contacted him about this misfiling, and he re-filed the civil cover sheet. (Docket No. 4.) But the Civil Cover Sheet did not reset the filing time in the NEF for the Complaint. Indeed, the NEF for the correctly filed Civil Cover Sheet shows that it was filed at 11:11 am on August 7, 2023, not on August 4. It is therefore beyond dispute that Jackson's Complaint was not filed, and the case was not "commenced" for purposes of Rule 3, until August 4, 2023, one day past the 90-day deadline.

To avoid dismissal for failure to file within the 90-day limitations period, Jackson must demonstrate that the deadline should be equitably tolled. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990). But equitable tolling requires that some impediment beyond Jackson's control prevented timely filing. See Heideman v. PFL, Inc., 904 F.2d 1262, 1266 (8th Cir. 1990) ("Equitable tolling is appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands."). Jackson's only argument that equitable tolling is appropriate is that the case was initiated before midnight on August 3, or that the misfiled Civil Cover Sheet somehow caused the system to mistakenly date her Complaint as filed on August 4. The clear evidence, however, is that

5

the Complaint was not filed until August 4.  Equitable tolling is not appropriate.

Cases are legion that missing Title VII's 90-day deadline by even a single day warrants dismissal.  See, e.g., Begay v. St. Joseph's Indian Sch., 922 F. Supp. 270 (D.S.D. 1996) (claim filed on 91st day dismissed as untimely); see also Taylor v. Books A Million, 296 F.3d 376, 380 (5th Cir. 2002) (claim filed one day after 90-day period dismissed as untimely); Paniconi v. Abington Hospital-Jefferson Health, 604 F. Supp. 3d 290, 293 (E.D. Pa. 2022) (same).  And another Judge in this District dismissed as untimely a Title VII complaint filed incorrectly on the 90th day and not correctly refiled until four days later. Brinkman v. Nasseff Mech. Contr'rs, Inc., 251 F. Supp. 3d 1266, 1273 (D. Minn. 2017) (Kyle, J.).  Jackson offers no contrary authority and dismissal for failure to comply with the applicable statute of limitations is appropriate.

**B.    Failure to State a Claim**

Even if Jackson's Complaint were timely filed, however, it would be subject to dismissal for failure to sufficiently plead Jackson's claims.  The pleading alleges that Defendant See made "inappropriate comments" about Jackson's African hairstyle, and threatened to call Jackson's bank to interfere with Jackson's relationship with her bank. (Compl. ¶ 19.)  The pleading offers no details such as when these alleged comments and threats occurred.  Jackson also contends that See "improperly discussed Ms. Jackson's confidential personnel business with others and humiliating [sic] her." (Id.)  But that is the extent of the allegation; the pleading does not indicate with whom See allegedly discussed Jackson's business, or what that business was, or how See supposedly humiliated Jackson. As another example, Jackson alleges that "HHS white employees used racially derogatory

6

comments but HHC forced the African American employees to go to racial sensitivity training." (Id.) The Complaint does not allege that any employee made racially derogatory comments to Jackson herself, when or where any of these comments happened, or whether Jackson was required to attend racial sensitivity training. Defendant's alleged "legacy of discrimination" against its African-American employees (id. ¶ 10), is simply insufficient to plausibly plead any illegal discrimination against Jackson herself.

Other examples of the Complaint's fatally sparse pleading abound. For instance, the Complaint asserts that Jackson was discriminated against because of an alleged disability in violation of the ADA. Nowhere in the Complaint does Jackson explain what that disability is, other than two oblique references to an "emotional" or "perceived mental disability." (Id. ¶¶ 31, 54.) Jackson likewise offers no specific allegation regarding the alleged disability discrimination that would, if true, establish the required causation for a claim under the ADA. See Denson v. Steak 'n Shake, Inc., 910 F.3d 368, 370 (8th Cir. 2018) (an ADA plaintiff must plead that she "(1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action as a result of the disability") (quotations omitted).

Jackson also claims to have been discriminated against on the basis of her age, but does not plead how old she is,[2] or indeed any other facts to support the causation element of an age-discrimination claim. See Aulick v. Skybridge Americas, Inc., 860 F.3d 613,

---

[2] At the hearing, the Court questioned counsel about the Complaint's failure to include relevant details, and mistakenly stated that Jackson did not plead her race for purposes of her race-discrimination claims. Jackson sufficiently alleged her race, but as noted, did not plead essential elements of her other discrimination claims.

7

621 (8th Cir. 2017) (noting that the elements of age-discrimination claim are that the plaintiff "(1) was at least 40 years old; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was rejected for someone sufficiently younger to permit the inference of age discrimination"). These failures mean that Jackson's Complaint does not plausibly state a claim on which relief can be granted. If timely, her Complaint would be dismissed on that basis.

**C.     Exhaustion**

Finally, even if timely and sufficiently pled, Jackson's claims that arise out of her termination must be dismissed. Jackson's EEOC charge provides that the alleged discrimination took place from May 1, 2020, to May 5, 2021. (Munic Decl. Ex. A (Docket No. 13-1).) Jackson was not terminated until after 2021. (See Compl. ¶ 12 (stating that the alleged discrimination "culminat[ed] in [Jackson's] improper termination in **[DATE]** [sic], 2023"); ¶ 14 (stating that Jackson worked at HCMC "until her wrongful termination in October of 2022").) An employment-discrimination plaintiff must exhaust her administrative remedies with respect to her claims before bringing a lawsuit. See Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996) ("The proper exhaustion of administrative remedies gives the plaintiff a green light to bring her employment-discrimination claim, along with allegations that are 'like or reasonably related' to that claim, in federal court."). Jackson did not bring another EEOC charge—or amend her

pending charge—after her termination to include allegations related to that termination, thus did not properly exhaust her remedies with respect to her termination.

Jackson argues that her termination is part of a "continuing violation," making her EEOC claim timely as to all adverse actions Defendant took against her, including her termination. Jackson did not check the "continuing action" box on the EEOC form, but even if she had, termination is a discrete event. See Hutson v. Wells Dairy, Inc., 578 F.3d 823, 826 (8th Cir. 2009) ("A termination is a discrete act."). Jackson's failure to include in her charge the time period encompassing her termination means that any claim that her termination was discriminatory or retaliatory is barred. Moses v. Dassault Falcon Jet-Wilmington Corp, 894 F.3d 911, 920 (8th Cir. 2018) (Because plaintiff "never filed a new [EEOC] charge for the termination . . . . all federal claims related to the termination are beyond the scope of the [EEOC] charge" and were properly dismissed.).

Jackson has brought a claim that she was subjected to a hostile work environment, which would allow her to proceed on a continuing-violation theory. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002) (noting that "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period"). But any discrete act that she claims was discriminatory or retaliatory must fall within the time she outlined in her EEOC charge, or it is both time-barred and unexhausted. See id. (noting that claims arising out of "discrete discriminatory

9

or retaliatory acts" must be filed within the statutory time period). Jackson's claims related to her termination are therefore subject to dismissal on this basis as well.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion to Dismiss (Docket No. 9) is **GRANTED**;

2. The Complaint is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  February 28, 2024                         *s/Paul A. Magnuson*
                                                  Paul A. Magnuson
                                                  United States District Court Judge